```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 1 1 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                            :

CESAR CASTRO,                     :

                             :             10 Civ. 1680 (KBF)
                Petitioner,     :             04 Cr. 664-2 (TPG)
                             :

                  -v-           :          OPINION & ORDER

UNITED STATES OF AMERICA,      :

                             :
                Respondent.    :
                             :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Cesar Castro, presently incarcerated in CI Northeast Ohio Correctional Center, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence and judgment.  (Petition at 1, 10 Civ. 1680, ECF No. 2.)[1]  Castro was found guilty of heroin conspiracy charges following a one-week jury trial in August 2007, over which United States District Judge Thomas P. Griesa presided.  On May 29, 2008, Judge Griesa sentenced Castro to 120 months' imprisonment, five years' supervised release, and a $100 special assessment. (Judgment at 1-4, 04 Cr. 664, ECF No. 31.)

      For the reasons set forth below, Castro's petition is DENIED.[2]

---

[1] Because many of the pages in Castro's petition are not numbered, the page references in this decision correspond to the page numbers added by ECF to the header of each page.

[2] No further evidentiary hearing is necessary in this action.  The combined submissions of the parties provide sufficient basis to deny the petition.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001).

I.    BACKGROUND

Castro and his co-defendants were originally charged on July 13, 2004 with one count of conspiracy to distribute, and to possess with intent to distribute, 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846.  (04 Cr. 664, ECF No. 1.)  Superseding indictments were subsequently returned and filed against Castro, on June 30, 2006 and August 10, 2007, charging him with one count of conspiracy to distribute, and to possess with intent to distribute, one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.  (04 Cr. 664, ECF Nos. 6, 17.)

Castro was represented by Thomas Moran from his indictment up through his August 2007 trial.  (Petition Ex. 7 ¶ 1.)  Following indictment but prior to trial, Castro and Moran asked for a meeting with the U.S. Attorney's Office to engage in a so-called "innocence proffer," or a chance to explain Castro's conduct.  (Trial Tr. at 417, 04 Cr. 664, ECF No. 19.)  That meeting took place on November 22, 2005, and was attended by Castro, Moran, two Assistant U.S. Attorneys, and a representative from the Drug Enforcement Administration ("DEA"); an interpreter was also present.  (Id. at 417-18.)  After the purpose of the meeting—a chance to explain his conduct—was described to him, Castro agreed to continue.  (Id. at 417-18.)

Castro later contested the charges against him at a five-day trial from August 20, 2007 to August 24, 2007.  At trial, the government called a cooperating witness, Castro's co-defendant, Raphael Beato.  Beato testified about his relationship with Castro, their involvement in heroin transactions, and numerous intercepted calls to

2

and from Beato's cell phone.  (Id. at 71-73, 97-118, 124-39, 168-211, 215-21.)  Beato

testified that Castro was present at meetings at which heroin purchases from

Colombia were discussed, that Castro was involved in at least three separate heroin

transactions that Beato organized.  (Id. at 97-99, 104-105, 110-16, 124-37.)  Beato

also explained how the intercepted calls on which he, Castro, and their co-

conspirators were heard fit into the heroin conspiracy he had previously described.

(Id. at 139-44, 151-211, 215-44.)  The government called two DEA agents who

testified to their undercover investigation and surveillance of Beato, Castro, and

their co-conspirators, which further corroborated Beato's testimony and the

intercepted calls.  (Id. at 46-52, 281-300.)  The government also established that an

individual whom the parties stipulated was a heroin courier was seen riding in

Castro's car along with Beato and another co-conspirator by DEA agents.  (Id. at

221-44, 292-99.)

Castro chose to testify in his own defense at trial.  He testified on direct

examination that he worked as Beato's chauffeur, and that he believed Beato to be a

loan shark and international currency trader rather than a narcotics trafficker.  (Id.

at 319-22, 325-29, 338-39.)  On cross-examination, Castro admitted that he did not

previously mention these facts in either his post-arrest interview with pretrial

services or his November 2005 innocence proffer.  (Id. at 415-20.)  The government

also presented the testimony of another DEA agent who attended the November

2005 innocence proffer in rebuttal; he confirmed that Castro did not mention any of

these facts at the meeting.  (Id. at 456-59.)

Moran also asked Castro about a prior arrest and subsequent conviction in New Jersey for felony possession of an interception device on direct examination. Castro testified that he was in a car with another individual "at the bridge in . . . Fort Lee, New Jersey," and that he did not know that a bag brought by the other individual contained the device (which was used to capture the cell phone numbers of nearby cell phones). (Id. at 329-30.) Castro testified that he was found guilty at trial and was sentenced to one year of probation. (Id. at 330.) This conviction was then the subject of cross and redirect examination. (Id. at 386-90, 427-29.)

In light of Castro's decision to testify, the day before summations, Judge Griesa notified the parties that he intended to give "an appropriate instruction on credibility that includes that." (Id. at 462.) Neither the government nor Moran raised any issue with such an instruction at that time. The next day, following summations, Judge Griesa instructed the jury, in relevant part, as to how to evaluate the credibility of witnesses generally. (Id. at 546-47.) Judge Griesa stated:

> Does the witness have an interest in the outcome of the case? That's another factor. And there are witnesses who have vital interests in the outcome of the case and they tell the truth, sometimes they're influenced not to tell the truth by such an interest.

(Id. at 547.) Later, after discussing the need to evaluate the credibility of the government's cooperating witness, Beato, Judge Griesa instructed the jury as to Castro's testimony:

> The defendant testified. The defendant did not need to testify. But he did, and, now that he has testified, you will judge his credibility in the way that you judged the credibility of any witness. The defendant, of course, has an interest in the outcome of the case, a vital interest, and you'll consider that, as I've already indicated, and it is up to you to

4

> determine after considering all that should be considered about his
> testimony, it is up to you to determine whether you credit his
> testimony or not. As to any witness, it may be that you credit part of
> the testimony and reject part or credit all and reject all. This is a
> matter which is up to your good judgment after considering the
> testimony and the different factors I've mentioned.

(Id. at 548-49.) After delivering the charge, Judge Griesa excused the jury and

asked counsel whether they had any further objections. (Id. at 554.) Judge Griesa

then engaged in the following colloquy with Assistant U.S. Attorney Loyaan Egal

and Moran:

> THE COURT: . . . Anything else?
>
> MR. EGAL: Your Honor, I leave this to you. With regards to the
> instruction you gave of the defendant's testimony, I believe you used
> the word "vital," and I believe that the United States v. Gaines, Second
> Circuit case from last year, the language is that "you should examine
> and evaluate their testimony just as you would the testimony of any
> witness with an interest in the outcome of the case." I don't know if
> your Honor -- I leave it to your Honor, but the word "vital" before
> "interest," does not appear to have come out of this case in the Second
> Circuit.
>
> THE COURT: The Court of Appeals does change things once in a
> while. We used to always say that, that was pretty standard. I don't
> know how to correct it.
>
> MR. EGAL: It's just the word "vital" might make it appear that the
> defendant had more of an interest than any other witness that
> testified.
>
> THE COURT: There are different degrees of interest.
>
> MR. EGAL: That's true.
>
> THE COURT: They're not all the same.
>
> MR. EGAL: Just that United States v. Gaines, it's that everyone's
> testimony is the same, including the defendant's. I just want to bring
> that to your attention.

THE COURT:  Mr. Moran, anything on that?

MR. MORAN:  Your Honor, I would have to concur with your Honor's statements that there are varying degrees of interest as to witnesses that provided testimony.  Certainly my client's interest is vital.  If Mr. Egal would like to provide the case for my review and we could argue it orally, I'm willing to do so.

THE COURT:  Oh, no, no, but it's a little hard to erase the word.  I'm certainly not going to say all witnesses have the same degree of interest, that's simply wrong.

MR. EGAL:  Your Honor, it appears that defense counsel has no issue with your instructions, thus there is no issue.

THE COURT:  I don't see how I could usefully go back to that without emphasizing.

MR. EGAL:  All right.  Thank you, your Honor.

THE COURT:  If anybody has a suggestion or language, I certainly will do it, but I don't care.  Okay, Mr. Moran, please?

MR. MORAN:  Your Honor, just to preserve that objection I placed on record at sidebar concerning conscious –

THE COURT: Well, you certainly have your record on that.

(Id. at 554-56.)  As a result, the Court did not amend the jury instruction it previously provided concerning Castro's testimony.  Castro was later convicted of the single count in the superseding indictment—conspiracy to distribute, and to possess with intent to distribute, one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846.  (Id. at 561-62.)

Following trial and prior to sentencing, Castro fired Moran and retained new counsel.  On May 29, 2008, Castro was sentenced to the statutory mandatory

minimum of 120 months' imprisonment, five years' supervised release, and a $100 special assessment. (Judgment at 1-4.)

On June 10, 2008, Castro filed a notice of appeal. (04 Cr. 664, ECF No. 33.) On August 1, 2008, Castro moved for a new trial under Federal Rule of Criminal Procedure 33 on the grounds that Moran provided ineffective assistance by (1) recommending that Castro appear for the innocence proffer to explain his conduct; (2) making statements during the course of trial about what took place at the proffer, at which he was present; and (3) referring to his own daughter's heroin addiction during his opening statement. (See Rule 33 Motion at 18, 30, 04 Cr. 664, ECF No. 35.) On February 11, 2009, in a six-page opinion, Judge Griesa denied the motion in its entirety. (Rule 33 Opinion at 6, 04 Cr. 664, ECF No. 42.) Castro subsequently filed a notice of appeal of Judge Griesa's denial of his Rule 33 motion on March 12, 2009. (04 Cr. 664, ECF No. 49.)

On June 23, 2009, after consolidating Castro's two appeals and hearing oral argument, the Second Circuit issued a summary order affirming Castro's conviction. See United States v. Beato, 330 F. App'x 314, 315-16 (2d Cir. 2009). In so holding, the court noted that, while the jury instruction concerning Castro's testimony "almost certainly" violated its holding in United States v. Gaines, 457 F.3d 238 (2d Cir. 2006)[3] because the reference to Castro's "vital interest" in the outcome of the case suggested Castro had an incentive to lie, Moran waived this argument at trial.

---

[3] In Gaines, the Second Circuit "denounce[d] any instruction . . . that tells a jury that a testifying defendant's interest in the outcome of the case creates a motive to testify falsely," and found such an instruction to be reversible error in a "close case" that "boiled down to the credibility of [the defendant's] testimony." Gaines, 457 F.3d at 246, 250.

See Beato, 330 F. App'x at 316.  The court stated that "[t]rial counsel's treatment of the Gaines problem, as well as the other incidents of allegedly ineffective assistance asserted both in Castro's direct appeal and in his appeal from the District Court's denial of his Rule 33 motion, raise questions of whether his counsel was constitutionally adequate." Id. at 316.  Nevertheless, relying on Massaro v. United States, 538 U.S. 500 (2003), the court "decline[d] to consider any of Castro's claims of ineffectiveness on this appeal, and leave them for consideration in a properly filed § 2255 motion." Beato, 330 F. App'x at 316.

Castro then timely filed the instant petition on March 3, 2010, and the petition became fully briefed on July 22, 2010.  Judge Griesa subsequently held hearings on September 16, 2011, September 28, 2011, and January 11, 2012 arising out of Castro's present counsel's requests for discovery related to a potential conflict of interest of Moran.[4]  In a letter dated May 7, 2012, Castro's counsel informed Judge Griesa that, after receiving and reviewing this discovery, he was withdrawing that particular argument (Point V) from Castro's petition. (See Letter, 10 Civ. 1680, ECF No. 13.)

The petition was transferred to the undersigned on June 6, 2013.

---

[4] Moran was convicted pursuant to a guilty plea of federal racketeering charges on February 19, 2013.  (09 Cr. 369, ECF Nos. 92, 453-54, 486, 502.)  Moran's charged criminal conduct took place from in or about November 2003 to May 21, 2009 (see Superseding Indictment ¶ 25, 09 Cr. 369, ECF No. 92), during the same period when Moran represented Castro (see Petition Ex. 7 ¶ 1.)  In light of Moran's own criminal conduct, Castro sought discovery related to Moran's potential connections to Beato. (Id. at 64-69.)

II.    DISCUSSION

Castro petitions this Court for relief under 28 U.S.C. § 2255 because he

alleges he received ineffective assistance of counsel from Moran, his trial counsel.[5]

Such a petition will only be granted if a petitioner can show that (1) his or her

counsel's performance fell below an objective standard of reasonableness under

prevailing professional norms, and (2) he or she was prejudiced by counsel's

deficient performance.  See Strickland v. Washington, 466 U.S. 668, 687-96 (1984).

As to the first prong of the Strickland test, attorney conduct is subject to an

objective standard of reasonableness, and is accorded deference in light of the

"range of legitimate decisions" that accompanies the various circumstances

encountered by counsel.  Id. at 688-89.  Reviewing courts "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance, bearing in mind that [t]here are countless ways to provide

effective assistance in any given case and that [e]ven the best criminal defense

attorneys would not defend a particular client in the same way."  United States v.

Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quotation marks omitted) (citing

Strickland, 466 U.S. at 689).

As to the second prong, because ineffective assistance may render the

outcome of a proceeding unreliable, a defendant need only demonstrate "a

---

[5] As the government notes (see Opp. at 10-12, 10 Civ. 1680, ECF No. 4), to the extent Castro raises a
substantive challenge to his conviction based on the "vital interest" jury instruction related to his
testimony, this argument is procedurally barred.  See Beato, 330 F. App'x at 316 (noting that Moran
waived this argument at trial); United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well
established that a § 2255 petition cannot be used to relitigate questions which were raised and
considered on direct appeal.") (internal quotation marks omitted).

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Still, more is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693. The Second Circuit has rejected § 2255 petitions based on ineffective assistance of counsel because a petitioner is unable to show prejudice in light of "overwhelming evidence of guilt adduced at trial." Strouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991); see United States v. Simmons, 923 F.2d 934, 956 (2d Cir. 1991) ("[G]iven the plethora of evidence against him, there is little reason to believe that alternative counsel would have fared any better."); United States v. Reiter, 897 F.2d 639, 645 (2d Cir. 1990) (similar).

With respect to the three ineffective assistance arguments that Castro previously raised in his Rule 33 new trial motion (Point II), Judge Griesa carefully analyzed each of these arguments in his February 11, 2009 opinion, using the required Strickland v. Washington framework, and found them to be without merit. (Rule 33 Opinion at 6.) This Court sees no reason to analyze these arguments any differently, and adopts Judge Griesa's analysis[6] and conclusion that these arguments do not show Castro received ineffective assistance of counsel.[7]

---

[6] With respect to Castro's argument that Moran was ineffective because he recommended that Castro appear for an innocence proffer, the Court further notes that Castro stated on cross-examination at trial that both he and Moran sought the meeting, that he understood its purpose, had an interpreter present, and decided to continue with the meeting with that knowledge. (Trial Tr. at 417-18.)
[7] Castro concedes that he included these arguments in his petition so as to preserve them for appellate review in light of the fact that the Second Circuit declined to reach them. (See Petition at 23 n.20; Reply at 1, 10 Civ. 1680, ECF No. 5.)

Castro's remaining ineffective assistance arguments[8] are that: (A) Moran failed to object to the "vital interest" jury instruction concerning his testimony; (B) Moran introduced Castro's prior criminal conviction during his direct examination; and (C) the combination of the alleged errors he has previously noted constitutes ineffective assistance. Each of these arguments is without merit, and Castro is entitled to no relief under § 2255.

A. Failure to Object to "Vital Interest" Jury Instruction

Castro argues that Moran's failure to object to the jury instruction Judge Griesa gave concerning Castro's "vital interest" in the outcome of the case, after it had already been given to the jury, constituted ineffective assistance. (Petition at 13.) According to Castro, Moran should have objected and moved for a mistrial, and his failure to do so prejudiced Castro because it prevented direct appellate review of the instruction. (Id. at 27.) Castro argues that this was a close case "essentially pitting the defendant's version of events against the testimony of a cooperating witness," with the outcome dependant on the believability of Castro's testimony. (See id. at 14, 29-30, 33.)

Even assuming Moran's failure to object to the instruction, after it was already given, fell below an objective standard of reasonableness,[9] Castro fails to meet his burden of showing that he suffered prejudice. As Judge Griesa noted in

---

[8] As noted above, Castro withdrew his argument that a potential conflict of interest existed with Moran in light of Moran's own criminal activity (Point V) in a letter dated May 7, 2012. (See Letter, 10 Civ. 1680, ECF No. 13.)

[9] Though the Court need not reach this issue for purposes of this decision, the Court notes that Moran's decision not to object certainly could have fallen within the range of legitimate decisions for trial counsel. As Judge Griesa himself noted on the record, any curative steps which could have been taken at that point may have only served to further highlight the issue for the jury. (Trial Tr. at 554-56.)

11

his decision denying Castro's Rule 33 motion, the government introduced a "wealth of evidence" concerning Castro's guilt. (See Rule 33 Opinion at 4.) This was not, as Castro argues, a close case; the evidence against Castro was indeed overwhelming, especially when considered in light of Castro's own inconsistent and incredible testimony. See, e.g., Strouse, 928 F.2d at 556.

Beato testified to Castro's extensive involvement in the heroin trafficking activities of both himself and their co-conspirators. That testimony was corroborated by independent evidence in the form of intercepted calls and DEA agent surveillance—Castro was heard speaking (or referenced on) the calls, and was observed by DEA agents with his co-conspirators (including driving a heroin courier on one occasion). In contrast, Castro's self-serving testimony concerning Beato— that Castro merely acted as Beato's unknowing chauffeur, and that he believed Beato to be a loan shark and international currency trader—was impeached multiple times by his prior omissions and by the testimony of another DEA Agent who was present at his November 2005 innocence proffer. Castro admitted to these inconsistencies and provided no justification for them, nor does he in connection with this petition. Though Castro argues that the case turned on the believability of his version of events, it is unclear which version he expects the jury to credit—the version he told prosecutors and DEA agents prior to trial, or the version he told at trial. The Court finds that Castro's unbelievable testimony substantially bolstered the wealth of evidence of guilt that the government already introduced against him during its case-in-chief.

12

It is for this reason that the Court also declines to credit Castro's argument that he suffered prejudice because Moran's failure to object prevented direct review of the jury instruction on direct appeal.  In <u>Gaines</u>, the court dismissed the government's argument that the jury instruction error was harmless because it was "close case" that "boiled down to the credibility of Gaines's testimony"—"the officers' testimony was mistaken in material respects, and even if believed, it was not inconsistent with Gaines's claim that the inoperable weapon hidden in the crevice of the cab's back seat was not his."  <u>Gaines</u>, 457 F.3d at 250.

Though the Second Circuit previously determined that the instruction at issue here "almost certainly violated Gaines," <u>Beato</u>, 330 F. App'x at 316, this is not a similarly close case based on the evidence adduced at trial.  As described above, the government presented evidence in the form of (1) testimony from a cooperator (Beato) who engaged in heroin trafficking on multiple occasions with Castro; (2) testimony from DEA agents who conducted surveillance of Beato, Castro, and their co-conspirators; and (3) intercepted calls involving Beato, Castro, and their co-conspirators that corroborated this testimony.  On the other hand, Castro's own testimony was wholly inconsistent with both the other evidence and his own prior statements to law enforcement.  The Court thus finds that, even if Castro was able to obtain direct review of this potential <u>Gaines</u> error, such error would have been found to be harmless in light of the wealth of evidence of guilt adduced at trial.  <u>Cf.</u> <u>United States v. Brutus</u>, 505 F.3d 80, 89-90 (2d Cir. 2007) (holding <u>Gaines</u> error harmless in "not a close case," where defendant testified inconsistently with

13

statements made following her arrest, and where her testimony was otherwise not believable).

Accordingly, Castro is unable to meet his burden of showing that he suffered prejudice as a result of Moran's alleged ineffective assistance in failing to object to the jury instruction concerning Castro's testimony.

### B.  Introduction of Criminal Conviction

Castro next argues that Moran's decision to introduce Castro's prior arrest and conviction in New Jersey for felony possession of an interception device on direct examination was "unnecessary" and "without any strategy rationale," and that Castro suffered prejudice as a result.  (Petition at 52.)  This argument is also without merit.

Once Castro made the decision to testify at trial, Moran was required to make a strategic decision about how best to deal with, inter alia, Castro's prior felony conviction.  As the government correctly notes (see Opp. at 21-24), the government could have reasonably argued that this conviction was admissible under Federal Rule of Evidence 609(a)(2)[10] because the New Jersey statute Castro violated made it illegal to possess an electronic, mechanical or other device, knowing that the design of such a device was for the primary use of the "surreptitious" interception of a wire, electronic or oral communication.[11]  See N.J.

---

[10] The version of Rule 609(a)(2) in effect at the time of trial provided that "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."  Fed. R. Evid. 609(a)(2) (2006).

[11] As Castro was found guilty on October 16, 1997 and sentenced to one year probation on February 27, 1998 (see Opp. at 23-24), the introduction of this conviction at his August 2007 trial would have been timely.  See Fed. R. Evid. 609(b).

Stat. § 2A:156A-5(a).  Cf. Jones v. N.Y.C. Health & Hosp. Corp., No. 00 Civ. 7002

(CBM), 2013 WL 124270, at *1 (S.D.N.Y. June 3, 2003) (holding conviction for

embezzlement of public money under 18 U.S.C. § 641 admissible under Rule

609(a)(2)).  Thus, Moran's strategic decision about the manner in which to introduce

his client's felony conviction to the jury on direct examination—giving his client an

opportunity to explain his actions before being cross-examined—is entitled to

deference.  See Strickland, 466 U.S. at 688-89.

    The Court finds that Castro has failed to meet his burden of showing

ineffective assistance of counsel on the basis of Moran's questions concerning

Castro's prior felony conviction.[12]

    C.  Cumulative Effect of Errors

    Finally, Castro argues that the Court should apply a cumulative error

analysis to the alleged errors he has previously identified in order to establish

ineffective assistance of counsel under Strickland.  (See Petition at 58-64.)  Such an

argument fails because, for the reasons set forth above, the Court finds that none of

Castro's allegations satisfy the requirements of Strickland—(1) performance that

fell below an objective standard of reasonableness under prevailing professional

norms; and (2) resulting prejudice.  See Strickland, 466 U.S. at 687-96.

---

[12] Additionally, for the reasons set forth in Part II.A, supra, Castro also fails to show that he was
prejudiced by Moran's decision to ask questions about his prior felony conviction on direct because of
the wealth of evidence of his guilt, as well as Castro's own inconsistent and incredible testimony.

III.   CONCLUSION

For the reasons set forth above, Castro's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); see Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).

The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial of this motion would not be taken in good faith.  See Feliz v. United States, No. 01 Civ. 5544 (JFK), 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

The Clerk of the Court is directed to terminate the action 10 Civ. 1680.

SO ORDERED.

Dated:       New York, New York
             December _11_, 2013


                              _____
                                     KATHERINE B. FORREST
                                   United States District Judge


16